## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

YVONNE TOY,             )
                               )
             Petitioner,    )
                               )
vs.                        )     Case No. CIV-06-1428-M
                               )
MIKE MULLEN, Warden,    )
                               )
             Respondent.    )

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing pro se, brings this action pursuant to 28 U.S.C. § 2254 seeking a writ of habeas corpus. United States District Judge Vicki Miles-LaGrange referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). The Respondent has filed a response and Petitioner's time to reply has lapsed.[1] The matter is now at issue. For the following reasons, it is recommended that the grounds raised in the petition be denied, but that the petition be held in abeyance for a reasonable time pending information from the Petitioner as to the status of her post-conviction relief efforts.

## BACKGROUND

Petitioner challenges her conviction for cultivation of a controlled dangerous substance after former conviction of a felony, for which she was sentenced to 15 years imprisonment. Case No. CF-2002-96, District Court of Noble County. Petition, p. 1, Ex.

---

[1] On January 11, 2007, Respondent was ordered to file a response to the petition. That order also gave Petitioner 15 days from the date the response was filed to file a reply. [Doc. No. 8]. The response was filed on January 30, 2007. [Doc. No. 12]. Thus, Petitioner's reply was due February 14, 2007. The only filings Petitioner made after the response was filed were a Notice of Change of Address, a copy of a notice to appeal from the denial of her state post-conviction relief application, and a copy of a notice in which she apparently asks the state court for an extension to file the appeal. See [Doc. Nos. 14, 15 and 16].

1.  Petitioner's conviction and sentence were affirmed on direct appeal.  Id. at p. 2.  She had not sought state post-conviction relief at the time she filed her petition.  Id. at pp. 2, 3.

Petitioner raises four grounds for relief.  In Ground One, she alleges that her right to due process was violated when evidence of her oral confession was admitted at trial.  Petition, p. 9.  In Ground Two, Petitioner claims that the prosecutor violated her right to due process when he made improper arguments to the jury.  See id. at p. 14.  In Ground Three, she contends that trial counsel rendered ineffective assistance.  Id. at p. 17.  Finally, in Ground Four, Petitioner argues that the cumulative effect of errors made at trial deprived her of a fundamentally fair trial.  Id. at p. 23.  Petitioner raised the same issues on direct appeal.  Id. at p. 2; Response, p. 3; Toy v. State, No. F-2004-748, pp. 1-2 (Okla. Crim. App. Dec. 29, 2005) (attached to Response as Exhibit 3).

## DISCUSSION

For factual and legal issues that have been adjudicated in state court, a federal district court may only grant a writ of habeas corpus if the state court's adjudication: (1) "resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).  A state court's determination is contrary to clearly established federal law if it applies a rule that contradicts the law set forth in Supreme Court cases or confronts a set of facts that are materially indistinguishable from a Supreme Court decision, but arrives at a different

result.  Williams v. Taylor, 529 U.S. 362, 405-406 (2000).  A state court's determination involves an unreasonable application of clearly established federal law if it identifies the correct governing legal principle from Supreme Court decisions, but unreasonably applies that principle to the facts of the petitioner's case.  Id. at 413.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411.

A.    Ground One - Confession

An anonymous tipster informed the Noble County Sheriff's Office that marijuana was growing in a rural part of the county near a house that had sustained severe tornado damage. Petition, p. 5; Trial Tr. Vol. I, pp. 142-43, 145-46.  A sheriff's deputy visited the area and found several marijuana plants growing on a tract of land equipped with an electric watering system.  Petition, pp. 5-6; Tr. Vol. I, pp. 143-44, 146-47.  Oklahoma Bureau of Narcotics agents assisted with the investigation and set up video surveillance of the marijuana patch.  Petition, p. 6; Tr. Vol. I, pp. 186, 189-90.

For approximately two months, the video cameras were left at the location. Petition, p. 7; Tr. Vol. I, pp. 190-91.  Two people, later identified as Petitioner and her common-law husband, Michael Smith, were observed on the tape, allegedly tending to the marijuana plants. Petition, p. 7; Tr. Vol. I, pp. 192-94.  On August 23, 2002, Petitioner was stopped while driving and arrested for cultivating marijuana.  Petition, p. 7; Tr. Vol. II, pp. 61-62, 71.  The arresting officers informed Petitioner that they had video footage

of her tending to the plants in the marijuana patch and they then questioned her on the side of the road.  Petition, p. 7; Tr. Vol. II, pp. 64, 66.  In response to the officers' questioning, Petitioner told them that she grew the marijuana because it was "too expensive to buy," that the activity recorded was her "taking care of my babies," and that she knew that cultivating marijuana was illegal, but she did not agree with the law. Petition, pp. 10-11; Tr. Vol. II, pp. 66-67, 78, 124-25.

Petitioner and Smith, both charged with cultivating marijuana, elected to be tried jointly.  Tr. Motion Hearing, pp. 93-94.  After holding a pre-trial Jackson v. Denno[2] hearing, the trial judge concluded that Petitioner's roadside oral statements were admissible against her.[3]  Petition, p. 9; Tr. Motion Hearing, pp. 74, 92.  At trial, the arresting officers testified about the inculpatory statements Petitioner made at the time of her arrest.  Petition, pp., 9-11; Tr. Vol. II, pp. 66, 67, 78, 124-25.

Petitioner does not challenge the trial court's implicit finding that she confessed voluntarily nor does she argue that admitting evidence of her statements violated her Sixth Amendment right to confrontation.  See Petition, pp. 11-12.  Petitioner also concedes that the testimony about her confession was relevant and acknowledges its highly probative value.  Her complaint is that the probative value of her confession was outweighed by the unfair prejudice to her as it was the "'only' evidence establishing with certainty that the activity observed in the video tapes was, in fact, the cultivation of marijuana."  Id. at p. 11.  The Oklahoma Court of Criminal Appeals concluded that there

---

[2] 378 U.S. 368 (1964).

[3] Citing constitutional concerns, the trial court did order the redaction of any portion of Petitioner's statements that inculpated Smith.  Tr. Motion Hearing, pp. 94-96.

was "no support for [Petitioner's] argument that the confession was somehow not admissible in her joint trial with her husband."  Toy, No. F-2004-748, p. 2.

A state court's evidentiary rulings do not provide a basis for federal habeas relief unless the ruling rendered the petitioner's trial fundamentally unfair.  Fox v. Ward, 200 F.3d 1286, 1296 (10th Cir. 2000) (stating that to justify habeas relief, a trial court's evidentiary error must be "so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process.") (quotations and citation omitted).  Petitioner's claim concerning the unfairly prejudicial nature of admitting evidence of her confession raises state evidentiary issues. Therefore, federal habeas relief is not available unless Petitioner demonstrates that permitting testimony about her confession rendered her trial fundamentally unfair.  This she has not done.

Section 2403 of the Oklahoma Evidence Code permits a trial court to exclude relevant evidence if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, needless presentation of cumulative evidence, or unfair and harmful surprise."  The portion of section 2403 relevant here, the "unfair prejudice" basis for exclusion, is identical to its federal counterpart found in Federal Rule of Evidence 403.  Thus, federal law interpreting the "unfair prejudice" basis for excluding relevant evidence is instructive.

Relevant evidence is inherently prejudicial.  United States v. Pettigrew, 468 F.3d 626, 638 (10th Cir. 2006).  For purposes of Rule 403, unfair prejudice "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."  Old Chief v. United States, 519 U.S. 172, 180 (1997) (quoting

Advisory Committee's Notes to Fed. R. Evid. 403); <u>United States v. Chalan</u>, 812 F.2d 1302, 1308 (10th Cir. 1987). That evidence is damaging to a defendant's case does not amount to unfair prejudice within the meaning of Rule 403. <u>See</u> <u>Fitzgerald v. United States</u>, 719 F.2d 1069, 1071 (10th Cir. 1983). As the Sixth Circuit Court of Appeals has explained, Rule 403:

> does not exclude evidence because it is strongly persuasive or compellingly relevant - the rule only applies when it is likely that the jury will be moved by a piece of evidence in a manner that is somehow unfair or inappropriate. The truth may hurt, but Rule 403 does not make it inadmissible on that account.

<u>In re Air Crash Disaster</u>, 86 F.3d 498, 538 (6th Cir. 1996).

Petitioner does not argue that the evidence of her confession caused the jury to determine guilt on an inappropriate basis. <u>See</u> Petition, pp. 9-12. As Respondent notes, she offers no explanation whatsoever for her contention that her confession's admission somehow became more prejudicial because it was admitted at a joint trial. Response, p. 7. If Petitioner had been tried separately, her confession would have been admissible, and could have been used to establish the same facts it was used to establish at her joint trial, namely that the video footage showed her cultivating marijuana. Thus, the prejudicial effect of admitting Petitioner's confession was not increased simply because it was admitted at Petitioner's joint trial.[4] Instead, Petitioner's argument is premised solely on the detrimental effect the admission of her confession had on her defense.

---

[4] Petitioner's co-defendant, Michael Smith, made this same argument in his own petition for § 2254 relief and it appears that Petitioner and Smith have submitted virtually the same petitions in support of their respective claims as Petitioner failed to eliminate some references to Smith as the petitioner in her own petition. <u>Compare</u> Petition, pp. 5-12, <u>with</u> <u>Smith v. Parker</u>, No. CIV-06-1434-HE, Petition, pp. 5-12. This may explain why Petitioner has emphasized the significance of the joint nature of the trial even though it makes no actual difference to the strength of her claim.

Clearly though, the highly probative nature of evidence alone does not compel its exclusion.

Because Petitioner has not demonstrated that the testimony concerning her confession caused the jury to determine guilt on an improper basis or rendered her trial fundamentally unfair, the Oklahoma Court of Criminal Appeals' determination that evidence of Petitioner's confession was properly admitted at trial was not contrary to or an unreasonable application of clearly established federal law.  Ground One affords Petitioner no relief.

B.      Ground Two - Improper Jury Argument

Petitioner contends that the prosecutor made three improper arguments to the jury concerning the credibility of the witnesses and the applicable law.  Petition, pp. 14-16. Specifically,  when defense counsel cross-examined one of the arresting officers, he tried to show that the officer's testimony about Petitioner's confession was not trustworthy. See Tr. Vol. II, pp. 74-84.  During closing arguments, the prosecutor noted that, contrary to defense counsel's suggestion, it was highly unlikely that the arresting officers falsely testified about Petitioner's confession.  He argued that the possibility of perjury charges along with job and pension loss discouraged them from conspiring to give false corroborating testimony.  Tr. Vol. IV, p. 20.  Additionally, the State and defense presented conflicting testimony as to whether the marijuana at issue was cultivated.  In closing, the prosecutor asked the jury to compare the backgrounds of the witnesses who gave the conflicting testimony when deciding which conclusion to accept.  Id. at p. 30.

Petitioner contends that these two comments improperly vouched for the credibility of the State's witnesses.  Petition, pp. 14-15.

The third comment about which she complains is her claim that the prosecutor's closing arguments distinguishing the crime charged from the lesser included offense of possession of marijuana improperly simplified Oklahoma law and misled the jury. Petition, p. 15;  Tr. Vol. IV, p. 18.

A prosecutor's jury arguments deprive a defendant of a fundamentally fair trial only in the rare circumstance that the arguments are so egregious within the context of the entire trial that they render the entire proceeding fundamentally unfair.  See Donnelly v. DeChristoforo, 416 U.S. 637, 645 (1974) (setting forth standard to consider improper jury argument claims where no specific constitutional right is alleged to have been violated); see also Brecheen v. Reynolds, 41 F.3d 1343, 1355 (10th Cir. 1994).  It is not enough to show that the remarks were undesirable or even universally condemned. DeChristoforo, 416 U.S. at 643.  Rather, the relevant question is whether the comments so infected the trial with unfairness as to make the resulting conviction a denial of due process.  Darden v. Wainwright, 477 U.S. 168, 181 (1986); Hamilton v. Mullin, 436 F.3d 1181, 1187 (10th Cir. 2006), cert. denied, 127 S.Ct. 560 (2006).

Improper jury argument allegations are considered in the context of the entire trial:

> To view the prosecutor's statements in context, [courts] look first at the strength of the evidence against the defendant and decide whether the prosecutor's statements plausibly "could have tipped the scales in favor of the prosecution." . . . [Courts] also ascertain whether curative instructions by the trial judge, if given, might have mitigated the effect on the jury of the improper statements. . . . When a prosecutor responds to an attack made by defense counsel, [courts] evaluate that response in light of the defense argument . . . . Ultimately, [courts] "must consider the probable effect the

prosecutor's [statements] would have on the jury's ability to judge the evidence fairly."

<u>Fero v. Kerby</u>, 39 F.3d 1462, 1474 (10th Cir. 1994) (quotations and citations omitted).

> 1.    *Vouching for the Credibility of Witnesses*

Petitioner claims that the prosecutor vouched for the credibility of state witnesses on two occasions during his closing argument.   However, she does not identify the specific portion of the prosecutor's closing argument that she claims vouched for the arresting officers' credibility.   When she made the same argument on direct appeal, she directed the Court's attention, through citation, to the following portion of the closing argument:

> So here's what we have if you believe the defense argument that it's all made up. [The arresting officers] they decide they're going to falsify her confession, just make it up.  Put in the report.  Falsify evidence.  That [the arresting officers] got up there on the witness stand, took the oath and committed perjury, a crime carrying imprisonment in the penitentiary.  An act that would make them lose their job and lose their pension, but there's two of them so now we have a conspiracy at least among those two . . . they hatch this conspiracy to commit perjury and falsify evidence in a case where there's already a mountain of evidence.  They already know who did this and what they're doing.   But let's risk all that, do a conspiracy to commit perjury right here.  That makes no sense whatsoever.  Each and every one of us knows [Petitioner] confessed to the crime.  She made the statement she's taking care of her babies.  So both of them said hey let's just say she's taking care of her babies in this conspiracy we're just going to perpetrate this fraud and crime.  Absolutely is ridiculous.  They took the oath, looked you in the eye and just made it up.

Tr. Vol. IV, pp. 19-20.

Additionally, the  prosecutor asked the jury to resolve the conflict about whether the marijuana at issue was cultivated by:

> Compar[ing] [the defense expert's background] to the witnesses for the State.  Well, just one.  I'll tell you [to] compare it to [Agent] Steven Gibson.

9

> He's dedicated his life to capturing people breaking the law.  He has a 100,
> he testified about a hundred of the rural grow operations.  He doesn't - you
> can see he knows what he's doing.

Id. at p. 30.

On direct appeal, the Oklahoma Court of Criminal Appeals found "no indication the prosecutor impermissibly vouched for the credibility of the State's witnesses . . .", the comments "were not personal assurances from the prosecutor of the witnesses' credibility" and that these arguments responded "to defense counsel's accusations that officers had made up [Petitioner's] confession."  Toy, No. F-2004-748, p. 3.

A prosecutor should not personally vouch for the credibility of state witnesses. Moore v. Gibson, 195 F.3d 1152, 1173 (10th Cir. 1999).  Argument is impermissible vouching "only if the jury could reasonably believe that the prosecutor is indicating a personal belief in the witness' credibility, either through explicit personal assurances of the witness' veracity or by implicitly indicating that information not presented to the jury supports the witness' testimony."  Thornburg v. Mullin, 422 F.3d 1113, 1132 (10th Cir. 2005) (quotation omitted).

The challenged portions of the prosecutor's closing arguments would not lead a jury to believe that the prosecutor was expressing his personal belief in the truth of the testimony of the State's witnesses, either expressly or implicitly.  As to the arresting officers, the prosecutor did not imply that he had reason to know whether they were being truthful.  He simply asked the jury to believe their testimony and highlighted some obvious motives to be truthful.  The prosecutor's argument asking the jury to compare witness backgrounds was not improper because it is permissible to ask a jury to make a

credibility determination based upon the trial testimony - that is what juries do.  Cf. United States v. Adams, 271 F.3d 1236, 1245 (10th Cir. 2001) (noting that jury is responsible for making witness credibility determinations based upon evidence introduced at trial).  Since there was testimony about each witness' background, it was not improper to ask the jury to consider it.  Nothing in the prosecutor's comments constituted improper vouching.

Even assuming for the moment that these comments were improper, they must be considered in context.  See Fero, 39 F.3d at 1474; see also United States v. Tyler, 42 Fed. Appx. 186, 194 (10th Cir. June 21, 2002) ("any vouching statements must be judged against the context of the entire proceeding.").[5]  Defense counsel attacked the credibility of the arresting officers who obtained Petitioner's confession at several points throughout the trial beginning in his opening statement, during cross-examination, and through closing.  See Tr. Vol. I, pp. 138-39, Vol. II, pp. 72-73, 78-80, 82, 138, Vol. IV, pp. 49-55.  Thus, at the beginning of closing arguments, the prosecutor encouraged the jurors to examine the evidence and determine the facts for themselves.  Tr. Vol. IV, pp. 11-12.  As noted, the prosecutor's statements were in response to defense counsel's attacks on the credibility of the State's witnesses.  See Darden, 477 U.S. at 182; see also Moore, 195 F.3d at 1173 (recognizing that improper statement made in response to defense counsel's arguments does not make statement proper, but it may affect context in which jury views improper statement).

---

[5] Unpublished disposition cited as persuasive authority pursuant to Tenth Circuit Rule 32.1.

Furthermore, the prosecutor and the trial court both advised the jury that counsel's arguments could not be considered evidence.  Tr. Vol. IV, p. 68.  Those reminders attenuated any improper effect that the prosecutor's comments may have had.  See, e.g., United States v. Roberts, 185 F.3d 1125, 1144 (10th Cir. 1999) (finding "at most" harmless error in prosecutor's comments when prosecutor "explicitly disclaimed any ability to vouch for witness credibility" and trial court gave curative instructions concerning counsel's arguments); see also Tyler, 42 Fed. Appx. at 194 (finding that prosecutor's comments encouraging jury to determine witness credibility based upon what they saw during trial combined with curative instructions about the evidentiary value of counsel's arguments were sufficient to cure any error caused by improper arguments).  Furthermore, it is unlikely that the prosecutor's arguments greatly swayed the jury considering the compelling evidence implicating Petitioner that the State presented which included video surveillance footage and a confession.

2.    *The Lesser Included Offense*

During closing arguments, the prosecutor advised the jury, "[The defendants are] not charged with possession of marijuana and drying it.  They're charged with cultivating it."  Tr. Vol. IV, p. 75.  He also explained: "Possession of marijuana typically when we think of that, that's like having a joint in your pocket.  A little bit of marijuana on your possession. A very minor offense."  Id. at p. 18.  Petitioner contends that these statements erroneously summarized the applicable law and "diverted the jury from properly deciding the issues related to guilt or innocence of the charged offense and/or the lesser-included offense."  Petition, p. 15.

12

On appeal, the Oklahoma Court of Criminal Appeals characterized the prosecutor's comments as an explanation of the "difference between the lesser included offense and the charged offense in everyday terms the jury could easily understand," and "reasonable inferences based on the evidence." Toy, No. F-2004-748, p. 3.

On habeas review, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Bowser v. Boggs, 20 F.3d 1060, 1065 (10th Cir. 1994). Under Oklahoma law, possession of marijuana is a misdemeanor offense while cultivation of marijuana is a felony. Compare Okla. Stat. tit, 63, § 2-402, with § 2-509. The Oklahoma Court of Criminal Appeals found that the prosecutor's comments summarized the law applicable to the charged and lesser included offenses in everyday terms. Toy, No. F-2004-748, p. 3. Since that determination is not clearly inaccurate, it is entitled to deference. Moreover, to the extent that the prosecutor's summary was inaccurate or oversimplified Oklahoma law, any errors were cured by the written instructions that the jury took into deliberations. See Fero, 39 F.3d at 1474.

Petitioner has not shown that the prosecutor's remarks were improper and deprived her of a fair trial. Thus, the Oklahoma Court of Criminal Appeals' determination that the prosecutor's jury arguments were proper was not contrary to or an unreasonable application of clearly established federal law. Ground Two does not warrant relief.

C.     Ground Three - Ineffective Assistance of Counsel

Petitioner claims that counsel performed deficiently at a pre-trial hearing and during trial.  Petition, p. 17.  Specifically, the trial court conducted a  pre-trial Jackson v. Denno hearing and ruled that evidence of Petitioner's roadside confession could be introduced at trial against her.  Tr. Motion Hearing, p. 92.  Petitioner contends that trial counsel was ineffective for failing to ensure that evidence of her confession was excluded.  Petition, p. 17.  She also alleges that trial counsel was ineffective for failing to object to the prosecutor's jury arguments examined in Ground Two.  Petition, p. 18.


During closing argument, Petitioner's counsel also admitted that the State introduced enough evidence to show that Petitioner "probably" cultivated marijuana. Petitioner contends that advancing such an argument conceded guilt and amounted to ineffective assistance.  Id.

Lastly, Petitioner's counsel called a cannabis expert to testify.  Petitioner alleges that some of the testimony provided by the expert during cross-examination was damaging to her defense and that, therefore, it was objectively unreasonable for counsel to call the expert to testify.  Id. at pp. 19-22.

To establish that counsel was ineffective, a habeas petitioner must show that (1) her counsel's performance was constitutionally deficient, and (2) counsel's deficient performance was prejudicial.  Strickland v. Washington, 466 U.S. 668, 687 (1984); United States v. Cook, 45 F.3d 388, 392 (10th Cir. 1995).  To show deficient performance,

a habeas petitioner must show "that counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688.

1.   *Failure to Obtain Exclusion of Petitioner's Confession*

At the <u>Jackson v. Denno</u> hearing, counsel asked the court to exclude Petitioner's roadside confession because it was not recorded or reduced to writing and there was nothing to ensure that the arresting officers' recollection of the confession was accurate. Counsel suggested that the confession should "be suppressed based on lack of reliability." Tr. Motion Hearing, p. 92. Petitioner contends that this argument was inapposite because a "finding that a confession is 'reliable' or that it satisfies a hearsay exception does not render it admissible *against the declarant's co-defendant in a joint trial*." Petition, p. 17 (italics added).[6]

Admitting a nontestifying codefendant's confession inculpating the defendant at their joint trial violates the defendant's Sixth Amendment right to confront the witnesses against him. <u>Bruton v. United States</u>, 391 U.S. 123, 126 (1968). Contrary to Petitioner's suggestion, counsel could not have argued, in good faith at least, that permitting the introduction of evidence of her own statements would violate her right to confrontation. <u>See</u> <u>id.</u> at 129 n.3 (noting that statement that was hearsay as to one defendant was admissible against the declarant defendant). The failure to raise meritless arguments

---

[6] Notably, Petitioner's argument is also inapposite. With respect to the statements at issue, Petitioner was the declarant not the "declarant's codefendant." <u>See</u> Okla. Stat. tit. 12, § 2801(A)(2) (defining "declarant" as a person who makes a statement). A declarant defendant's own statements are not hearsay and may be admitted as evidence against the declarant defendant. <u>Id.</u> § 2801(B)(2)(a). Further, Petitioner's counsel also argued that the initial warrantless entry upon the land and the subsequent warrantless entries upon the land to conduct surveillance required suppression of all evidence, including Petitioner's statements to the police. <u>See</u> Tr. Motion Hearing, pp. 3-9.

does not constitute deficient performance.  See Cook, 45 F.3d at 393.  Under these circumstances.  Petitioner cannot show that trial counsel performed deficiently.

 2.    *Closing Argument Complaints*

Petitioner argues that trial counsel rendered ineffective assistance by failing to object to the "improper" jury arguments discussed in Ground Two.  Petition, pp. 18-19. Reviewing this claim on direct appeal, the Oklahoma Court of Criminal Appeals found that the prosecutor's arguments were not improper, so "any objections raised by defense counsel would have been overruled."  Toy, No. F-2004-748, p. 4.  Thus, it concluded, counsel did not perform deficiently.  Id.

As discussed in part B of this Report and Recommendation, the prosecutor's arguments were not improper and did not deprive Petitioner of a fair trial.  As the Oklahoma Court of Criminal Appeals noted, the failure to raise meritless objections is not a ground for finding that counsel performed deficiently.  Cook, 45 F.3d at 393.

Additionally, in closing, Petitioner's counsel argued:

> And I'm going to go through the evidence this morning and I'm going to suggest to you and there's no doubt that [the State] presented some evidence that [the defendants] could have done this.  There's no doubt that [the State] presented some evidence that they probably did it.

Tr. Vol. IV, p. 36.  Petitioner contends this statement constitutes ineffective assistance because "counsel appeared to concede the defendants were guilty. . . ." Petition, p. 19. The Oklahoma Court of Criminal Appeals found that, viewed in context, defense counsel "definitely" did not concede guilt.  Toy, No. F-2004-748, p. 4.

Conceding a client's guilt is deficient performance.  See Fisher v. Gibson, 282 F.3d 1283, 1304 n.12 (10th Cir. 2002).  Indeed, prejudice is presumed to follow an attorney's

concession of guilt.  United States v. Williamson, 53 F.3d 1500, 1511 (10th Cir. 1995).

When there is an allegation that counsel conceded guilt, the focus is "whether, in light

of the entire record, the attorney remained a legal advocate of the defendant who acted

with undivided allegiance and faithful, devoted service to the defendant." Id. (citations

and quotations omitted).

Viewing counsel's statement in context, as the Oklahoma Court of Criminal

Appeals did, it is clear that counsel did not concede guilt or cease to act as Petitioner's

advocate.  Immediately before making the argument, counsel told the jury that his clients'

defense in the case was that they were not guilty and the State was required to prove its

case beyond a reasonable doubt.  He summarized the meaning of that burden:

> Not putting on some evidence, not even proving that they probably did it.
> If you believe that what this state of Oklahoma did was prove that these
> folks probably cultivated marijuana, probably did it, then under the law
> they are not guilty because the case has not been proven beyond a
> reasonable doubt.

Tr. Vol. IV, p. 35.

At various other points throughout the closing argument, Petitioner's counsel

reminded the jury that they could not convict the defendants unless the evidence showed

guilt beyond a reasonable doubt.  He explained the instruction of presumption of

innocence and he pointed out what he contended were inconsistencies in the State's case,

creating a reasonable doubt as to his clients' guilt.  Tr. Vol. IV, pp. 35-49.  The isolated

statement that Petitioner has extracted from the closing argument is not a concession of

guilt.  Rather, when the trial record and closing argument as a whole are considered,

counsel clearly remained Petitioner's vigorous advocate who more than fulfilled the basic

duty to, "at the minimum . . . hold the state 'to its heavy burden to prove guilt beyond a reasonable doubt.'"  <u>Fisher</u>, 282 F.3d at 1306 (quoting <u>United States v. Cronic</u>, 466 U.S. 648, 657 n.19 (1984)).

      3.    *Damaging Expert Testimony*

Petitioner's counsel presented the testimony of Chris Conrad, a court-qualified cannabis expert.  Tr. Vol. III, pp. 88, 99.  During direct examination, counsel elicited testimony from Conrad to support Petitioner's defense.  In particular, Conrad informed the jury that he found feral marijuana growing in Noble County the day before he testified, he did not believe that the surveillance tapes showed activity that could be affirmatively characterized as cultivating marijuana, and he offered an innocent explanation for Petitioner and Smith's activities in the marijuana patch.  <u>Id.</u> at pp. 102, 106-109, 112-13, 116, 122, 124, 126-27, 130-33, 135.  He also attacked the State's calculations as to the possible yield from the marijuana field.  <u>Id.</u> at pp. 122, 124-25, 178-86.

During cross-examination, the prosecutor questioned Conrad about his professional background and personal beliefs to bring out information that may have caused some jurors to discredit Conrad's testimony.  Tr. Vol. III, pp. 141-54.  For example, Conrad testified that he believed that the D.A.R.E. (Drug Abuse Resistance Education) program promoted some erroneous beliefs about marijuana use and he had written a brochure titled: "Why DARE Is Bad for School, Police, Parents, and Kids."  <u>Id.</u> at pp. 142-43, 149.  Conrad also disclosed that he favored legalizing marijuana with certain restrictions so long as its use is taxed and regulated.  <u>Id.</u> at pp. 142-43.  Additionally, Conrad acknowledged that he once played a character named "Johnny Marijuana Seed" in a PBS program, wrote

a play titled <u>Marijuana! A Comedy of Sorts</u>, and wrote for <u>High Times</u> magazine, a "progressive" marijuana lifestyle publication that once ranked him as one of the "25 Living Legends of Pot." <u>Id.</u> at pp. 144, 147-48.

Petitioner contends that calling Conrad to testify, which gave the prosecutor the chance to elicit this negative information, showed that counsel pursued strategies without "conducting a thorough investigation, and in an unprepared and ill-informed manner, rendering the defense strategy patently unreasonable and defense counsel's performance objectively unreasonable . . ." Petition, p. 21. The Oklahoma Court of Criminal Appeals determined that choosing to call Conrad as an expert witness was not an objectively unreasonable trial strategy. <u>Toy</u>, No. F-2004-748, pp. 5-6. The Court noted that Conrad was the only witness to offer an alternative, innocent explanation for Petitioner's conduct. <u>Id.</u> at p. 5.

When evaluating an ineffective assistance claim, counsel's challenged conduct and strategic decisions are judged for reasonableness "on the facts of the particular case, viewed as of the time of counsel's conduct." <u>Strickland</u>, 466 U.S. at 690. Thus, counsel's choices should not be viewed with the benefit of hindsight. <u>See</u> <u>Richie v. Mullin</u>, 417 F.3d 1117, 1123 (10th Cir. 2005), <u>cert.</u> <u>denied</u>, 547 U.S. 1045 (2006).

Generally speaking, "[t]here is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" <u>Romano v. Gibson</u>, 278 F.3d 1145, 1151 (10th Cir. 2002) (quoting <u>Strickland</u>, 466 U.S. at 689). Consequently, a habeas petitioner  bears the burden to show that counsel's action or inaction was not based on a valid strategic choice. <u>Bullock v. Carver</u>, 297 F.3d 1036, 1046-47 (10th Cir.

2002).   The overarching concern is whether counsel's performance was objectively unreasonable.  Id. at pp. 1047-48.

Petitioner has failed to demonstrate that trial counsel's decision to call Conrad to testify was  objectively unreasonable.  Counsel submitted Conrad's lengthy *curriculum vitae* and surely anticipated that the prosecution would inquire into Conrad's potentially unpopular beliefs on cross-examination.   Petition, p. 19.   Nevertheless, counsel determined that using Conrad's testimony to try to create reasonable doubt, even with the risk that damaging information would arise on cross, was more beneficial to defending Petitioner than failing to present any alternative explanation for the State's evidence at all. During cross-examination, counsel objected to the prosecutor's repeated inquiries into Conrad's personal beliefs and tried to mitigate damage by eliciting testimony on re-direct to show that Conrad's testimony was based upon the evidence he examined and not his personal beliefs. Tr. Vol. III, pp. 153-54, 187-90.  Conrad offered an innocent explanation for the video evidence and opined that he did not believe it affirmatively showed activities consistent with cultivating marijuana. Id. at pp. 102, 106-109, 112-13, 116, 122, 124, 126-27, 130-33, 135.   Further, Petitioner's counsel skillfully addressed this during closing arguments as he acknowledged Conrad's "weird" beliefs, but he pointed out that while he did not approve of Conrad, he brought Conrad in to testify because he is an expert on cultivation of marijuana, which even the State could not refute.  Id. at pp. 58-60.

Counsel's strategic determinations must be judged at the time they are made and are presumptively reasonable.  Strickland, 466 U.S. at 690.  Petitioner's counsel was charged with the difficult task of defending a client who confessed to the crime charged

20

in the face of video surveillance footage.  Petitioner offers nothing more than speculation that counsel's decisions were objectively unreasonable.  This is insufficient to meet the burden to prove an ineffective assistance of counsel claim on habeas review.

Petitioner requested an evidentiary hearing to develop evidence in support of her ineffective assistance of counsel claims.  However, federal court is not the appropriate forum to begin developing evidence in support of claims raised during state proceedings. See 28 U.S.C. § 2254(e)(2).  Accordingly, this request should be denied.

None of counsel's acts attacked as objectively unreasonable amounted to deficient performance.  Thus, it is not necessary to consider the existence of prejudice.  Strickland, 466 U.S. at 697.  The Oklahoma Court of Criminal Appeals' determination that Petitioner's ineffective assistance claims lacked merit is neither contrary to nor an unreasonable application of clearly established federal law.  Ground Three does not warrant relief.

D.    Ground Four - Cumulative Error

Petitioner's final argument is that the cumulative effect of the errors alleged to have occurred at trial deprived her of her due process right to a fundamentally fair trial. Petition, p. 23.  A cumulative-error analysis aggregates all the errors that individually have been found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they are not harmless.  United States v. Rivera, 900 F.2d 1462, 1470 (10th Cir. 1990) (en banc).  Because cumulative-error analysis "does not apply to the cumulative effect of non-errors," Petitioner must first show that two or more actual errors occurred before relief is justified.  See Moore v. Reynolds, 153 F.3d 1086,

21

1113 (10th Cir. 1998).  But since the undersigned has determined that the Petitioner presents no meritorious claims, her cumulative error argument is unavailing.

E.    Other Potential Claims

In the petition and in a letter submitted to the Court, Petitioner asks that the petition be held in abeyance, presumably while she exhausts state remedies.  Petition, p. 1; Letter to Court Clerk dated January 12, 2007 [Doc. No. 9].  Unfortunately, her request was not noted until the undersigned began to address her petition on the merits.  It is unclear whether Petitioner seeks to exhaust remedies for claims in addition to those presented in the petition or simply seeks another round of state review for the claims presented in the petition.  Petition, p. 1; [Doc. No. 9].  However, it is noted that Petitioner filed an application for state post-conviction relief in the trial court after she commenced this habeas action, although it is not known what grounds she raised.  That application was denied on May 11, 2007.  Case No. CF-02-96B, District Court of Noble County, Docket.  On May 21, 2007, and June 21, 2007, Petitioner filed notices of appeal in the trial court seeking to appeal "the order denying Post-Conviction relief" entered "on the 08 day of March, 2007." [Doc. Nos. 15, 16].  However, the Oklahoma Court of Criminal Appeals' website does not reflect a docketed appeal from Petitioner's application for post-conviction relief.    Accordingly, the status of  Petitioner's state post-conviction proceedings is unknown.

Considering the substantial obstacles to filing a second or successive petition for § 2254 relief, the undersigned recommends that the claims presented in the petition and discussed in this Report and Recommendation be **DENIED,** but that Petitioner be given

20 days from the date the Court rules on this Report and Recommendation to apprise the Court of what claims she has raised in her state post-conviction application and the status of her appeal of those claims. The Court can then determine whether to allow Petitioner to amend her petition. Pending receipt of this information, the undersigned recommends that the petition be abated. See Rhines v. Weber, 544 U.S. 269, 278 (2005) (approving of limited use of abeyances to permit habeas petitioners to exhaust claims in state court).

## RECOMMENDATION

Based upon the foregoing analysis, it is recommended that the claims presented in the petition be denied, but that this action be held in abeyance pending information from the Petitioner as to the status of her post-conviction relief efforts. Petitioner is advised of her right to file an objection to this Report and Recommendation with the Clerk of this Court by September 13, 2007, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1. Petitioner is further advised that failure to make timely objection to this Report and Recommendation waives any right to appellate review of both factual and legal issues contained herein. Moore v. United States, 950 F.2d 656 (10th Cir. 1991).

**ENTERED this 24th day of August, 2007.**

_____
DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE